IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CLIFFORD BONNER EL, #208359 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:05-CV-409-MEF |
| ) | |
| J.C. JILES, *et al*, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, plaintiff Clifford Bonner El ("Bonner"), a prison inmate, alleges that defendant correctional officer Lt. Dowling[1] physically assaulted him "without provocation." (Compl. at 3). According to the plaintiff, Dowling cursed him, "threw his elbow into . . . [his] chest pushing . . . [him] up against the wall and struck . . . [him] in the face at least (5) five times with his fist, he then pulled . . . [him] away from the wall and threw . . . [him] into another wall pushing . . . [his] head against it." (Pl's Affidavit in Opp. to Defs' Special Rep. at 2). Lt. Dowling denies the plaintiff's allegations, admits using some force against Bonner but asserts that the amount of force he used was reasonable in light of Bonner's belligerence and aggression. Bonner alleges that Warden Jiles was "supportive" of the alleged assault by Dowling on Bonner. Warden Jiles denies these allegations. Suffice it to say, the defendants' denial of Bonner's contentions created genuine issues of fact necessitating an evidentiary hearing,

---

[1]The plaintiff misspelled Lt. Dowling's name in his complaint as "Dawny."

*see* 28 U.S.C. § 636(b)(1)(B), on the excessive force claim and the claim against Warden Jiles.[2]  The evidentiary hearing was held on June 7, 2007.[3]  Upon consideration of the evidence presented, the court concludes that judgment should be entered in favor of the defendants.

## Warden Jiles

Jiles was not present at the time of the altercation between Dowling and the plaintiff.  He learned about it only later when he received a telephone call informing him of the incident.  Supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability.  *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006) *cert denied*, __ U.S. __, 2007 WL 1461087 (May 21, 2007).  Instead, supervisors can be held personally liable when either (1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the

---

[2]None of the parties filed a jury demand.

[3]At the beginning of the hearing, the plaintiff made a motion for appointment of counsel which the court denied.  This is not a case involving exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner.  The plaintiff also made a motion to continue the evidentiary hearing because he had no witnesses because he had been unable to file a witness list.  The court denied this motion.  The docket sheet in this case does not show that the plaintiff filed a witness list as required by the court's order entered on March 16, 2007. (doc. # 13).  The plaintiff stated that he had attempted to file a witness list, but it was returned to him by the clerk's office because of some procedural irregularity.  First, the docket sheet does not reflect such an action.  Secondly, the plaintiff could produce no documents substantiating that claim and could not produce the witness list he allegedly attempted to file.  Moreover, the plaintiff could not identify any witness he would have called who could testify about the matters in controversy.  He did identify one correctional officer who he asserted was standing in the doorway of the room in which the incident took place, but he could not state what this officer would testify about.  Consequently, the court concludes first that the plaintiff did not file a witness list and secondly that the plaintiff was not prejudiced in any way because he could not identify any witness who had evidence in support of the plaintiff's position.

alleged constitutional violation. *Id*. Under the second method, "[t]he causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Id*. *See also Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Furthermore, to be sufficient to notify the supervisor, the deprivations must not only be widespread, they also "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown*, 906 F.2d at 671.

Jiles did not personally participate in the incident between Dowling and the plaintiff. The plaintiff presented no evidence from which a reasonable trier of fact could conclude that there were incidences of widespread abuse of continuing duration which were obvious, flagrant or rampant. While the plaintiff alluded to one other incident of excessive force, a single incident is insufficient to establish the requisite causal connection. Judgment in favor of Warden Jiles should be entered.

## Lieutenant Dowling

The plaintiff and Dowling's versions of the events are different, to say the least. After careful consideration of all the evidence, the court finds that the plaintiff's version of the essential facts is not credible.[4] The court makes these findings of fact. Warden

---

[4] In reaching this conclusion, the court is fully cognizant of the rule in this circuit that a credibility determination cannot be based solely on the "status" of a witness. Rather, the court must weigh the testimonies of all the witnesses, taking into account the interests of the witnesses, the consistencies or inconsistencies in their testimonies, and their demeanor on the stand. *Gallego v. United States*, 174 F.3d 1196, 1198 (11th Cir. 1999). Aside from the plaintiff's demeanor on the stand as well has his obvious interest in a favorable outcome, the court notes that his allegations about the nature and extent of the force used against him are wholly inconsistent with the medical examination of him which took place shortly

Jiles had learned that the plaintiff had an enemy at Ventress and concluded that he should be transferred to another prison. The warden instructed a correctional officer to get the plaintiff to pack his personal items and to place him in administrative segregation pending the transfer. Lt. Dowling was a shift commander at Ventress Correctional Facility on April 12, 2005, while the plaintiff was waiting in a hallway for the officer to escort him to segregation. Dowling was in his office and heard the plaintiff in the hallway cursing about "being locked up." The plaintiff was very upset and demanded to see the warden. Dowling approached the plaintiff and told him to calm down. Dowling candidly explained that he was not polite in making this request because correctional officers must quickly gain control of a disturbed inmate before the situation gets out of hand. Dowling explained that the first step in gaining control is to use loud verbal commands which he did. To separate the plaintiff from other inmates, Dowling instructed the plaintiff to go into a small room off of the hallway. In the room, the plaintiff continued to yell loudly and demanded to see the warden. He also continually tried to leave the room, and his aggressiveness escalated. Dowling believed that the plaintiff was trying to "draw a crowd." As the plaintiff repeatedly approached Dowling, he felt unsafe and used a "pressure point control tactic"[5] in conjunction with pushing the plaintiff against the wall of the room. Dowling simultaneously yelled for help. Two other correctional officers

---

after the incident between him and Lt. Dowling.

[5]Dowling placed two fingers of his right hand to the base of the plaintiff's throat and applied pressure at the same time as he pushed the plaintiff against the wall.

responded and placed the plaintiff in handcuffs.  The plaintiff did not resist.  One of the officers involved in handcuffing the plaintiff did not see any evidence of injury to the plaintiff, and the plaintiff did not complain about being injured.  A correctional officer escorted the plaintiff to the prison infirmary for a medical examination commonly referred to as a "body chart."  The body chart of the nurse's examination states that the plaintiff voiced no medical complaints.  The nurse wrote in the body chart as follows: "skin warm & dry to touch.  Respirations even & unlabored.  Small amount redness to (L) side of face & ears present.  Raised red area apprx. 1 in. Noted to (L) side of face near (L) eye."

Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm."  *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973));  *see also Hudson v. McMillian,* 503 U.S. 1, 8 (1992).  To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  *Hudson,* 503 U.S. at 7-8;  *see also Whitley,* 475 U.S. at 321;  *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir. 1996).

Based on the evidence presented, the court finds that Dowling used force in an effort to maintain discipline in the prison.  Dowling first tried to calm the plaintiff by

5

using verbal commands and placing him in a room where he was sequestered from other inmates. However, as the plaintiff continued to yell, acted aggressively and tried to leave the room, Dowling used physical force to subdue the plaintiff. The evidence shows that the force was reasonably related to its need and not applied for any longer than necessary. Consequently, the court concludes that the force was not applied maliciously and sadistically for the purpose of causing harm. The use of force did not violate the plaintiff's Eighth Amendment rights, and judgment should be entered in favor of Lt. Dowling.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that judgment be entered in favor of the defendants and that this case be dismissed with prejudice. It is further the RECOMMENDATION of the Magistrate Judge that the costs of this proceeding be taxed against the plaintiff. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before June 25, 2007**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on

appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 12th day of June, 2007.

       /s/Charles S. Coody
      CHARLES S. COODY
      CHIEF UNITED STATES MAGISTRATE JUDGE